Argued and submitted February 24, affirmed on appeal; on cross-appeal affirmed in part, reversed and remanded in part August 13, reconsideration denied September 26, petition for review denied October 21, 1986 (302 Or 158)

# KING,
## aka Knight et al,
*Appellants - Cross-respondents,*

*v.*

# TALCOTT,
*Respondent - Cross-appellant.*

## (E83-0064; CA A35006)

723 P2d 1058

Dean Heiling, Roseburg, argued the cause for appellants. With him on the brief was Heiling & Morrison, P.C., Roseburg.

Bruce H. Anderson, Eugene, argued the cause for respondent - cross-appellant. With him on the brief was Hutchinson, Anderson, Cox & Teising, P.C., Eugene.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

On plaintiff's appeal, the dispositive issue is whether the trial court erred in granting defendant summary judgment on plaintiffs' claim for reformation. On defendant's cross-appeal, the issue is whether the trial court erred in denying defendant reasonable attorney fees for successfully defending the reformation claim and a claim for an implied easement. We affirm on the appeal and reverse in part and remand on the cross-appeal.

Plaintiff Watson Talcott (Watson) and defendant are brothers. Their relationship was harmonious until the Talcott family property was divided in 1971. Before 1975, Watson owned about 189 acres of land, with the east line abutting defendant's land. In January, 1975, Watson contracted to sell 80 acres to defendant without expressly reserving an easement for access to his remaining 109 acres. The contract included a provision for attorney fees:

> "In the event proceedings are instituted or appealed to foreclose, rescind, declare, enforce any right arising hereunder, or to recover possession, the prevailing party shall be entitled to recover * * * reasonable attorney's fees as fixed by the court * * *."

In December, 1980, Watson sold 69 acres to the Walkers, again without expressly reserving an easement to preserve access to his remaining 40 acres. In August and October, 1982, Watson sold the remaining 40 acres to plaintiff King, reserving a life estate.

On December 7, 1982, plaintiffs by letter demanded access across defendant's 80 acres. On December 14, defendant "for now" denied the existence of any easement. On January 7, 1983, plaintiffs filed a complaint seeking (1) reformation of the contract to provide for the express reservation of an easement, (2) alternatively, a declaration of an implied easement and (3) an injunction prohibiting defendant from interfering with plaintiffs' reasonable access. Three days later, plaintiffs obtained an *ex parte* order restraining defendant from interfering with plaintiffs' use of a road across defendant's land. On February 15, 1983, the trial court dissolved the restraining order. During the time that the restraining order was in effect, plaintiffs allegedly damaged defendant's property. Defendant's amended answer included

a counterclaim for that damage and a claim for his reasonable attorney fees.

In March, 1984, the trial court granted defendant a summary judgment on the reformation claim.[1] Plaintiffs' remaining claim and the counterclaim were tried to the court. On February 1, 1985, the trial court entered judgment against plaintiffs on the implied easement claim and on the counterclaim for the wrongful issuance of the restraining order. The court denied defendant's claim for attorney fees for successfully defending the reformation and implied easement claims.

We turn to the appeal. Plaintiffs alleged that Watson and defendant intended to reserve an access easement in favor of Watson and that by mutual mistake the easement was not included in the contract. Plaintiffs sought to reform the contract. They argue that the trial court erred when it granted defendant summary judgment on the reformation claim. We disagree.

The party moving for summary judgment must establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corp.,* 284 Or 695, 699, 588 P2d 1100 (1978). The purpose of reformation based on mutual mistake is to make an erroneous instrument correctly express the parties' agreement. *Manning Lumber Co. v. Voget,* 188 Or 486, 497, 216 P2d 674 (1950). An instrument will not be reformed because of a mistake of fact which, if known, probably would have induced the making of a different contract. "Thus, to warrant reformation for mutual mistake, the error must have been in the *drafting* of the instrument and not in the *making* of the contract." *Interior Elevator Co. v. Limmeroth,* 278 Or 589, 597, 565 P2d 1074 (1977). (Emphasis in original.) In this case, the trial court erred in granting summary judgment if there was a genuine issue of material fact as to whether there was a drafting error.

---

[1] This document was labeled "Judgment Order." The Oregon Supreme Court has stated:

"The term 'judgment order' has no meaning and should not be used. 'Judgment' and 'order' are two separate terms and have different meanings." *Ensley v. Fitzwater,* 293 Or 158, 162 n 2, 645 P2d 1062 (1982).

■ Defendant's affidavit in support of his motion for summary judgment states that he never intended his brother to have an easement across his land. Watson's affidavit controverts that assertion. However, Watson admitted in a deposition that he was told that an express easement was unnecessary, because he would have the right to cross defendant's property anyway. That admission makes it clear that Watson never intended expressly to reserve an easement. There was no drafting error. The trial court did not err in granting the summary judgment.

Plaintiffs' second assignment of error, that the trial court "erred in deciding the remaining issues in the case on the erroneous basis that plaintiffs' claim for reformation was unfounded," is without merit, given our holding that the reformation claim is unfounded. The trial court is affirmed on the appeal.

On the cross-appeal, defendant argues that the trial court erred in denying him reasonable attorney fees incurred in his successful defense against the reformation claim. We agree. In *Webb v. Culver,* 265 Or 467, 471, 509 P2d 1173 (1973), the court held that a contract provision similar to the attorney fees clause here was sufficient to support an award of attorney fees in a reformation action. *See also U.S. Natural Resources, Inc. v. Gray,* 66 Or App 769, 772-73, 676 P2d 912, *rev den* 297 Or 83 (1984).

We do not agree, however, that defendant is entitled to reasonable attorney fees incurred in defending the implied easement claim. ORS 20.096(1) provides:

"In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provision of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees * * *."

Defendant argues that the implied easement claim is "an action or suit on a contract" within the meaning of the statute, either (1) because the land sale contract "was the basis for and a necessary element in plaintiffs' implied easement claim," or (2) because the implied easement claim was an attempt to encumber the title Watson warranted in the land sale contract.

■ Defendant's first argument is without merit. An implied easement does not require a land sale contract for a basis. *See, e.g., Dressler et al v. Isaacs et al,* 217 Or 586, 596-97, 343 P2d 714 (1959). Although it is true that the terms of a land sale contract may be factors in determining whether the grantor intended an implied easement, *see Thompson v. Schuh,* 286 Or 201, 212, 593 P2d 1138 (1979), we do not believe that the legislature intended the phrase "an action or suit on a contract" to include every claim in an action in which a contract is involved. We turn to defendant's second argument.

In the contract, Watson convenanted that the land was "free from all liens and encumbrances [except as herein mentioned,] and that [defendant] shall have quiet enjoyment of said property, and that [I] will warrant and defend the same against all lawful claims whatsoever." Defendant argues that, because the implied easement claim is an unsuccessful attempt to encumber his property, he was required to defend the title Watson warranted in the contract. Because that defense amounted to an enforcement of the covenant against encumbrances, defendant continues, he is entitled to attorney fees under ORS 20.096 and the contract.

■ Although defendant's argument has surface appeal, he misconceives the nature of a covenant against encumbrances. It protects the grantee against all encumbrances, except those expressly excluded, existing as of the date of delivery. *See Leach v. Gunnarson,* 290 Or 31, 36, 619 P2d 263 (1980). The covenant is not broken unless the alleged encumbrance is "valid, legal and subsisting." 20 Am Jur 2d, "Covenants, Conditions and Restrictions" § 83; *see also Ellis v. Abbott,* 69 Or 234, 138 P 488 (1914).[2] In other words, a covenant against encumbrances is essentially an agreement to indemnify the grantee, *see Falk v. Amsberry,* 53 Or App 735, 738, 633 P2d 799 (1981), *in the event of a valid claim;* it does not come into play if there is no valid claim. Thus, defendant's successful defense against the implied easement claim did *not* amount to an enforcement of the covenant.

---

[2] The court held:

"[A] vendee who, after an unavailing notice to his vendor, *unsuccessfully* defends the title that has been warranted to him is entitled to recover from the vendor as a part of the damages the reasonable amount of his attorney's fees for making the defense." 69 Or at 240. (Emphasis supplied.)

The trial court did not err in denying attorney fees on the implied easement claim.

Affirmed on appeal; on cross-appeal, affirmed in part, reversed in part and remanded for award of attorney fees on the reformation claim only.