Submitted on briefs January 8, affirmed February 27, 1952

# REED *v.* FIRST NATIONAL BANK OF GARDINER ET AL.

241 P. 2d 109

*Gunther F. Krause* and *Walter H. Evans, Jr.,* of Portland, and *William D. Green, Jr.,* of Roseburg, for appellant.

*Orcutt, Long & Neuner,* of Roseburg, for respondents.

TOOZE, J.

This is an appeal by plaintiff Robin Reed from an order and judgment of the circuit court of Douglas county dismissing the action commenced by him in that court against First National Bank of Gardiner, Oregon, a national banking corporation, James W. Ford, James W. Ford, Jr., and O. H. Hinsdale, as defendants, for want of prosecution.

This action to recover general and punitive damages was commenced in said court on November 26, 1943. On December 8, 1943, defendants filed a motion to make the complaint in said action more definite and certain. No further proceedings were had in the case until November 1, 1949, when the county clerk of Douglas county mailed a notice which, omitting title, reads as follows:

"To; Robert G. Davis & Gunther F. Krause et al, Attorneys

"No action having been taken in the above entitled case for one full year immediately prior to the date of mailing this notice, and pursuant to the provisions of Chapter 223, Oregon Laws 1949, you are hereby notified that the above entitled cause will be dismissed by the court for want of prosecution on the first motion day in January, 1950, unless on or before such first motion day application, either oral or written, be made to the court and good cause shown why it should be continued as a pending case.

"Dated this 1st day of November, 1949."

From the record before us, it is apparent that this notice was addressed to the attorneys named therein

in care of the district attorney, Roseburg, Oregon. In any event, Mr. Krause, chief counsel for plaintiff, did not receive it at his post-office address in Portland. At the commencement of the action, one H. A. Canaday, an attorney of Roseburg, was one of the attorneys of record for plaintiff. For a time Canaday was district attorney for Douglas county. However, prior to November 1, 1949, Canaday died, and Robert G. Davis, named in said notice, became district attorney. Davis at no time appeared of record as one of plaintiff's attorneys.

According to Mr. Krause, he was advised of this notice sometime in December, 1949, and thereupon, William D. Green, Jr., an attorney of Roseburg, was employed to join with Krause as one of plaintiff's attorneys. On January 5, 1950, Mr. Green orally applied to the court for an order continuing the action as a pending case, representing to the court at that time that plaintiff would file an amended complaint within thirty days thereafter. Thereupon, the following order (omitting formal parts) was entered:

"It appearing that the above-entitled case has been re-activated and that one of the plaintiff's attorneys has represented an amended complaint will be filed within the next thirty (30) days,

"IT IS ORDERED that the above-entitled action be continued as a pending case and not be dismissed for want of prosecution.

"Dated this 5th day of January, 1950."

It appears from the record that, during the pendency of this action, the defendant bank had reorganized, changed its name to Umpqua National Bank, and moved its place of business to Reedsport, a few miles from Gardiner, in Douglas county. Mr. Krause, in his affidavit, states: "during December, 1949, I was ad-

vised that defendant First National Bank of Gardiner, Oregon had been dissolved after disposing of its banking business to Umpqua National Bank''. He asserts that an investigation was made to ascertain the true relationship between the First National Bank of Gardiner and the Umpqua National Bank, and that it was not until about April 22, 1950, that he discovered the true situation. He does not say that, in his investigation, he made any inquiry of defendants' attorney.

However, these changes with respect to the defendant bank were the sole reasons for filing an amended complaint.

At no time prior to April 18, 1950, was any further action taken in the case (except on January 26, 1950, there was inadvertently entered of record a duplicate of the order of January 5). Plaintiff did not file an amended complaint as his attorney represented to the court would be filed, nor did he secure, or attempt to secure, an extension of time within which to file it. On April 18, 1950, the court, of its own motion, entered an order vacating the prior orders of January 5 and January 26, continuing the case as a pending case, and dismissed the action for want of prosecution. From this order and judgment, plaintiff appealed to this court.

Thereafter, on April 22, 1950, plaintiff filed a motion to set aside the order of dismissal of April 18 and to reinstate the case on the docket, accompanied by affidavit in support thereof. Plaintiff also tendered for filing an amended complaint. A hearing was held on this motion April 28, 1950. On June 17, 1950, the trial court filed a memorandum opinion and, based thereon, entered an order denying the motion. From

this order, plaintiff also appealed to this court. The two appeals have been consolidated.

Omitting formal parts, the memorandum opinion of the trial court is as follows:

"On November 26, 1943, plaintiff filed his complaint in this action. In the complaint it is alleged, in substance, that Reed borrowed money from the defendant bank and hypothecated certain City of Reedsport bonds as security; that the bonds were the property of one Vivian Howard; that the defendants conspired with Eva I. Reed, former wife of plaintiff to obtain the bonds at a price far below their actual value; that in carrying out said conspiracy, defendants divulged its loan and the security to Eva I. Reed; that she caused the bonds to be attached and garnisheed on an unpaid judgment against plaintiff rendered by the Marion County Circuit Court; that said court determined that the bonds were the property of Vivian Howard; that plaintiff expended $3,000.00 in defending said attachment and garnishment and was damaged in that sum; and that such acts of the defendants were malicious. He demands $3,000.00 actual damages and $10,000.00 punitive damages.

"On December 8, 1943, defendants moved for an order requiring the plaintiff to make his complaint more definite and certain by alleging the name of the defendant who divulged to Eva I. Reed the information about the loan by the bank to Reed and the hypothecation of the bonds as security.

"No action was ever taken on this motion or in the case until January 5, 1950. The original attorneys for the plaintiff were H. A. Canaday, Gunther F. Krause and Walter H. Evans, Jr. There is nothing in the record to show their places of residence or postoffice addresses. Canaday, for a time, was District Attorney of Douglas County, but died prior to November 1, 1949. On that day the County Clerk gave notice to 'Robert G. Davis & Gunther F. Krause, et al, Attorneys' that the case would be

dismissed for lack of prosecution pursuant to Chapter 223, Oregon Laws 1949, on the first motion day in January, 1950, unless, on or before that day, application, oral or written, was made to continue the case as a pending case. Prior to November 1, 1949, Davis had succeeded Canaday as District Attorney. The clerk certified that the notice was mailed but did not specify to whom or at what address. Krause denied receipt of the notice.

"On January 5, 1950, Wm. D. Green, Jr., who had succeeded Canaday as one of plaintiff's attorneys, presented an order in which it is stated that the 'case has been re-activated and that one of the plaintiff's attorneys has represented an amended complaint will be filed within the next thirty (30) days' and which provided that the case be continued as a pending case and that it not be dismissed for want of prosecution. This order was signed by the Court. On January 26, 1950, the Court inadvertently entered, along with many other such orders, an order continuing the suit as a pending case.

"On April 18, 1950, no amended complaint having been filed and nothing having been done in the case by the plaintiff, the Court entered an order setting aside the orders of January 5 and January 26, 1950, and dismissing the suit for lack of prosecution.

"On April 22, 1950, the plaintiff filed a motion for an order setting aside the order of dismissal entered April 18, 1950, and supported the motion by the affidavit of Gunther F. Krause. With the motion there was tendered for filing an amended complaint, which is substantially the same as the original complaint, except that it alleges that the name of the bank has been changed to the Umpqua National Bank and its place of business has been changed from Gardiner, Oregon, to Reedsport, Oregon.

"In his affidavit, Mr. Krause says that he engaged H. A. Canaday of Roseburg as associate counsel and that he and plaintiff frequently urged

Canaday to endeavor to get the case at issue; that A. N. Orcutt, attorney for defendants, advised that Courtney Johns, an attorney of the Oregon bar, was a necessary witness but that he was in the military forces, and that the case could not be tried until his return. Mr. Orcutt, in a counter-affidavit, states that Johns is a necessary witness, and that he was in the military service, but that he was always available for the purpose of having his deposition taken, and that Johns has been out of the service for over three years and is practicing in Albany, Oregon. Krause further states in his affidavit that in December, 1949, he was advised that the First National Bank of Gardiner had been dissolved, but after considerable investigation found that such information was erroneous, and that the bank had only changed its name and place of business. He further states that Reed has at all times urged that the case be gotten at issue and tried. Krause asked to be sworn and to give a statement, which was done over the protest of the defendants. In it he admits lack of diligence on his part and on the part of Canaday, but denied lack of diligence on the part of Reed.

"While the clerk's certificate of service of the notice of dismissal for lack of prosecution is insufficient, that notice was undoubtedly received by the attorney for the plaintiff. He appeared and asked permission to file an amended complaint within thirty days, which permission was granted. No amended complaint having been filed for over three months, the case was dismissed for lack of prosecution.

"There was over six years delay in disposing of defendants' motion to make more definite and certain. In fact, it was never called up or disposed of. There was over three months delay in filing the amended complaint. It was only after the case was dismissed for lack of prosecution that plaintiff tendered his amended complaint. The amendment related only to formal matters, which could easily

have been taked [sic] care of at the trial, if the case had ever been gotten at issue. Both plaintiff and his attorneys have been negligent. The plaintiff is bound by the neglect of his attorneys.

"The dismissal should not be set aside.

"[Sgd.] Carl E. Wimberly
Circuit Judge."

Chapter 223, Oregon Laws 1949, provides:

"Not less than 60 days prior to the first regular motion day in each calendar year, the clerk of the court shall mail notice to the attorneys of record in each pending case in which no action has been taken for one full year immediately prior to the mailing of such notice, that each such case will be dismissed by the court for want of prosecution, unless on or before such first regular motion day application, either oral or written, be made to the court and good cause shown why it should be continued as a pending case. If such application not be made or good cause shown, the court shall dismiss each such case. Nothing herein contained shall be construed to prevent the dismissing at any time, for want of prosecution, of any suit, action or proceeding upon motion of any party thereto."

It will be observed that this statute deals principally with duties of the clerk of the court. The only duty imposed upon the court is to dismiss the case in the event no application be made or good cause shown for a continuation thereof. It is particularly important to note that the statute contains no restrictions or limitations upon the power of the court.

It is plaintiff's contention that the court was wholly without jurisdiction to dismiss the case, because notice had not been given as required by the statute. The first and only notice given was defective, in that it was not mailed to the attorneys of record at their last known post-office address. Though the statute does

not specifically provide that such notice shall be mailed to the last known post-office address of the attorney, nevertheless, such a requirement will necessarily be implied. Otherwise, the requirement for giving notice would be meaningless.

■ However, plaintiff is in no position to question the defect in the giving of the original notice, because he had actual knowledge thereof and, with such knowledge, appeared and asked for affirmative relief in the way of continuing the action as a pending case. It was continued upon his request and upon his representation that an amended complaint would be filed within thirty days.

But plaintiff insists that, inasmuch as the case was continued pursuant to the provisions of the statute, the court was without authority to dismiss it thereafter for want of prosecution without again having the clerk of the court give sixty days notice of its intention so to do.

■■ We think a fair interpretation of the order of continuance of January 5 is that the court based the same upon the assurance of plaintiff that an amended complaint would be filed within thirty days; this became a condition imposed for the further delay granted at the time. Considering the fact that, at the time, the case had been pending for more than six years without any action having been taken, the condition so imposed was entirely reasonable and proper. Plaintiff breached this condition and offered no excuse therefor until after the order of April 18 had been entered dismissing the action. Plaintiff does not attempt to explain why he did not apply to the court for an extension of time within which to file such amended complaint, if such extension were necessary. Insofar as the court was concerned, the record on April 18 disclosed on the part of plaintiff a complete indifference toward further

and diligent prosecution of the case. In such circumstances, and particularly in the light of the fact that the condition for the original order had been breached, we think the court was fully empowered to vacate its order of January 5, and that it was not essential that further notice be given.

Plaintiff then argues that, even if the court had the power to vacate its order of January 5 and to enter an order dismissing the action for want of prosecution, nevertheless, the court erred in denying his motion to vacate the order of April 18. In this connection, it is contended that the court abused its discretion.

■ Public policy demands that actions be diligently prosecuted. It is a duty of the plaintiff to prosecute his case with due diligence, and, if he fails in this duty, the consequences are the same as though no action had been begun. For a failure of plaintiff to perform his duty in the respects noted, the action may be dismissed for want of prosecution.

■ It is well established by the overwhelming weight of authority that the power of a court to dismiss an action for want of prosecution is an inherent power, and it exists independently of statute or rule of court. 27 CJS, Dismissal and Nonsuit, 232, § 65.

In 27 CJS, Dismissal and Nonsuit, 233, § 65, we find the following rule stated:

"* * * While statutes or rules of court providing for the dismissal of actions for want of prosecution have been adopted in a number of jurisdictions, such statutes or rules must be read in the light of the existence of *such inherent power, which remains unimpaired unless it is limited expressly or by necessary implication.* Thus it has been held that the affirmative expression of a statute providing for dismissal does not deprive the court of its inherent powers. * * * " (Italics ours.)

Wholly independent of the provisions of the statute of this state hereinabove quoted, the trial court had the inherent power to dismiss the action for want of prosecution. There is nothing in the statute that expressly limits the exercise of such power, nor is there anything therein from which such limitation may be implied. The history of the legislation upon this subject in Oregon will clearly demonstrate this to be true.

Until the year 1923, there was no statute in this state relating to the dismissal of actions for want of prosecution. Up to that time, actions were dismissed for want of prosecution by the court exercising its inherent power. In 1923 the legislature enacted ch. 10, Oregon Laws 1923, which is section 6-203, OCLA. This act provided:

"No court or judge of the state of Oregon shall, upon its own motion, for want of prosecution dismiss any suit, action or proceeding now pending, or hereafter pending, in any court in this state, except until after thirty (30) days' notice to each of the attorneys of record in said case shall have been given by the clerk of the court by mailing such notice to each of the attorneys of record in such case at their last known address; otherwise any such dismissal shall only be made upon motion of a party to such suit, action or proceeding."

This act was expressly repealed by the act of 1949 previously set forth.

It will be noted that the act of 1923 was expressly directed to the power of the court. It contains an express limitation upon an exercise of such power. Under that statute, the court could not dismiss a case for want of prosecution in any circumstances without complying with the provisions of the law, except that, in a proper case, it might do so upon motion of a

party. The effect of the statute was to destroy the inherent power theretofore exercised by the court. *Western Grain Co. v. Beaver Land-Stock Co.*, 120 Or 678, 680, 230 P 103, 253 P 539.

In contrast, the act of 1949 contains no restrictions or limitations upon the power of the court. Such limitations as had existed under the law of 1923 were eradicated. No reasonable conclusion may be drawn from this other than that the legislature intended to restore the court's inherent power.

In dismissing an action for want of prosecution, the court may proceed under the statute, or it may, of its own motion, take action to that end. In acting on its own motion, the court must proceed with judicial discretion. Its ruling will not be disturbed on appeal unless it is manifest from the record that the court's discretion has been abused.

Under the circumstances of this case, and as outlined in the memorandum opinion of the able and experienced trial judge, the order of dismissal for want of prosecution was not only fully justified, but also proper in every respect. At no time did plaintiff display any diligence, except after the case was dismissed. His conduct respecting the prosecution of this action failed to meet the test of the law. There was no abuse of discretion on the part of the trial court.

Judgment affirmed.